UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT A., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | NO. 2:19-CV-0274-TOR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 12, 17). The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion.

## JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 13, 2016, Plaintiff filed an application for Title II disability insurance benefits, alleging an onset date of August 20, 2013. Tr. 220-21. The application was denied initially, Tr. 127-29, and on reconsideration, Tr. 133-35. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on May 3, 2018. Tr. 53-86. On June 27, 2018, the ALJ denied Plaintiff's claim. Tr. 16-35.

As a threshold matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Tr. 21. At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity from August 20, 2013, the alleged onset date, through December 31, 2017, the date last insured. *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: Type I diabetes mellitus, obesity, generalized anxiety disorder, and depressive disorder. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then found Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] should never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to extreme temperatures and all exposure to hazards. He should be able to maintain attention and concentration for 2 hour intervals between regularly scheduled breaks. He can work in a predictable work environment with seldom change. He should not have any contact with the public.

Tr. 23-24.

At step four, the ALJ found Plaintiff was not capable of performing any past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform through the date last insured, such as cleaner housekeeping and cafeteria attendant. Tr. 27-28. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from August 20, 2013, the alleged onset date, through December 31, 2017, the date last insured. Tr. 28.

On June 20, 2019, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom testimony;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ's RFC formulation is supported by substantial evidence.

ECF No. 12 at 1.

## DISCUSSION

### A. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit his symptom testimony. ECF No. 12 at 3-8.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7)

any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 24.

*1. Treatment Noncompliance*

The ALJ found Plaintiff's symptom reporting was undermined by evidence that he was not compliant with treatment recommendations. Tr. 24-25. "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted). Here, the ALJ noted that despite Plaintiff's testimony that he was "constantly" checking his blood sugar levels and adjusting his medications, the record indicated that Plaintiff's diabetes was poorly controlled due to compliance issues. Tr. 24; *compare* Tr. 72, 302 *with* Tr. 58 (Dr. Jahnke testified that review of the full record showed Plaintiff's diabetes was poorly controlled due to compliance issues); Tr.

754 (Dr. Lyko noted Plaintiff's suboptimal control of his diabetes was "due to infrequent glucose testing [and] lack of correction insulin" and recommended Plaintiff test more frequently). The ALJ also noted that Dr. Jahnke testified that her review of the record did not reveal significant notes regarding diabetic education. Tr. 24-25; *see* Tr. 59. The ALJ reasonably concluded that Plaintiff's symptom allegations were consistent with evidence of Plaintiff's poor treatment compliance. Tr. 24-25. Moreover, Plaintiff did not challenge this finding. ECF No. 12 at 3-8. This finding is supported by substantial evidence.

    *2. Lack of Supporting Medical Evidence*

The ALJ found that Plaintiff's allegations of disabling mental health impairments were not supported by the medical evidence. Tr. 25. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Mental status examinations are objective

measures of an individual's mental health. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ noted that despite Plaintiff's allegations that anxiety and depression limited his ability to work, the record contained evidence of normal mental status examinations. Tr. 25; *compare* Tr. 302 *with* Tr. 65 (Dr. Winfrey testified Plaintiff "aced" his December 14, 2016 consultative mental status examination); Tr. 633 (April 28, 2016: mental status examination showed Plaintiff was alert and cooperative, had normal mood and affect, and exhibited normal attention span and concentration). The ALJ reasonably concluded that this mental status examination evidence was inconsistent with Plaintiff's allegations. Moreover, Plaintiff did not challenge this finding. ECF No. 12 at 3-8. This finding is supported by substantial evidence.

    *3. Daily Activities*

The ALJ found that Plaintiff's symptom allegations were inconsistent with his daily activities. Tr. 25. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the

claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted Plaintiff reported his daily activities to include personal care without limitations; household tasks such as vacuuming, taking out the garbage, and mowing the lawn; driving; grocery shopping and preparing simple meals; and taking a trip to Panama. Tr. 25; *see* Tr. 275-79, 303-07, 581. Although the ALJ relied on these activities, the ALJ did not articulate how they were transferable to a work setting or inconsistent with disability. Tr. 25. The Ninth Circuit has cautioned against reliance on "certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise" to discount a plaintiff's symptom allegations. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Even if the ALJ's finding is error, such error is harmless because the ALJ provided several other clear and convincing reasons, which Plaintiff did not challenge, to discredit Plaintiff's symptom allegations. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."). Because any error here is harmless, Plaintiff is not entitled to relief on these grounds.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinion of Plaintiff's treating physician, Adam Lyko, M.D. ECF No. 12 at 8-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Dr. Lyko began treating Plaintiff in 2012 and opined on November 13, 2017, that Plaintiff could walk two city blocks without rest or severe pain; that Plaintiff could sit or stand for no more than 30 minutes at one time; that Plaintiff could sit or stand/walk for no more than two hours total in an eight-hour workday; that Plaintiff would need 5-10 minute breaks hourly; that Plaintiff could lift and carry 10-20 pounds occasionally and less than 10 pounds frequently; that Plaintiff could frequently twist, stoop, crouch/squat, and climb stairs; that Plaintiff could occasionally climb ladders; that Plaintiff had bilateral 50% limitation in hand manipulation, 30% limitation in finger manipulation, and 20% limitation in reaching; that Plaintiff should avoid exposure to most environmental irritants; that Plaintiff would be "off task" 25% or more of a workday; that Plaintiff was incapable of tolerating even "low stress" work; that Plaintiff's impairments were likely to cause "good days" and "bad days"; that Plaintiff's impairments would

cause him to miss more than four days of work per month; and that Plaintiff's fluctuating blood sugars can impair his ability to function normally. Tr. 757-60. The ALJ gave Dr. Lyko's opinion little weight. Tr. 27. Because Dr. Lyko's opinion was contradicted by Dr. Winfrey, Tr. 63-69, Dr. Jahnke, Tr. 57-62, Dr. Staley, Tr. 116-17, Dr. Bernardez-Fu, Tr. 101-03, Dr. Harrison, Tr. 103-05, and Dr. Robinson, Tr. 117-19, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Lyko's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Lyko's opinion was entitled to less weight because it was insufficiently explained and insufficiently supported. Tr. 27. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, the ALJ found that Dr. Lyko opined certain manipulative limitations for which Dr. Lyko did not identify supporting evidence and that the record as a whole failed to support. Tr. 27. Plaintiff challenges the ALJ's conclusion by identifying a single treatment note that documents "abscess of upper arm and forearm," which was noted to improve with antibiotic treatment. ECF No. 12 at 9; *see* Tr. 482. This single treatment note does not undermine the substantial evidence supporting the ALJ's conclusion that the longitudinal record did not support Dr. Lyko's

opined manipulative limitations. Tr. 27; *see, e.g.*, Tr. 488 (August 27, 2013: no abnormal musculoskeletal or extremities findings upon physical examination); Tr. 443 (January 14, 2014: same); Tr. 431 (March 18, 2014: same) Tr. 419 (June 24, 2014: same); Tr. 625 (November 17, 2014: same); Tr. 650 (October 23, 2015: same) Tr. 633 (April 28, 2016: same); Tr. 597 (September 13, 2016: same); Tr. 708 (March 28, 2017: same). This finding is supported by substantial evidence.

Additionally, the ALJ gave significant weight to the hearing testimony of Dr. Jahnke, who testified that Dr. Lyko's opined limitations were not supported by the evidence. Tr. 25; *see* Tr. 60-62. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Dr. Jahnke specifically testified that, contrary to Dr. Lyko's assessment, Plaintiff's condition could not be accurately characterized as "brittle" diabetes and that Plaintiff's diabetes was poorly controlled due to his own treatment noncompliance. Tr. 58-59. As the ALJ noted, other evidence in the record supported a finding that Plaintiff was not fully compliant with his treatment regime. Tr. 24; *see* Tr. 754 (Dr. Lyko noted Plaintiff's suboptimal control of his diabetes was "due to infrequent glucose testing [and] lack of correction insulin" and recommended Plaintiff test more frequently); *see also* Tr. 598 (Plaintiff's glucose log "shows less frequent testing than desired"); Tr. 626 (Dr. Lyko recommended Plaintiff "test much more frequently"); Tr. 673

(Dr. Cosma found Plaintiff "still needs improvement on carb counting" and checking blood glucose more often); Tr. 679 (Dr. Cosma suspected Plaintiff was undercounting carbohydrates). The ALJ reasonably relied on Dr. Jahnke's opinion and the longitudinal evidence over the opinion of Dr. Lyko. The ALJ's finding is supported by substantial evidence.

Second, the ALJ found Dr. Lyko's opinion on mental limitations was entitled to less weight than the opinions of the psychologists in the record because Dr. Lyko did not have psychological expertise. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. § 404.1527(c)(5). Here, the ALJ noted that Dr. Lyko opined certain mental limitations despite not having mental health expertise. Tr. 27. Plaintiff challenges the ALJ's conclusion by arguing that Dr. Lyko had expertise because he was treating Plaintiff for anxiety. ECF No. 12 at 9. However, the treatment notes that Plaintiff identifies to support this argument are those of Dr. Eckert, not Dr. Lyko. Tr. 400, 438, 454, 457, 496, 499, 620, 624, 634, 648, 688, 706, 708, 711, 715. Plaintiff also argues that the ALJ misinterpreted Dr. Lyko's opinion and that the opined mental functional limitations were based on Plaintiff's physical condition rather than a mental health condition. ECF No. 12 at 9-10. Even if Plaintiff is correct, such error would be harmless because the ALJ identified other specific and legitimate reasons, supported by substantial evidence, to discredit Dr.

Lyko's opined limitations. *Molina*, 674 F.3d at 1115 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."). Plaintiff is not entitled to relief on these grounds.

## C. RFC Formulation

Plaintiff contends generally that the ALJ's RFC formulation is not supported by substantial evidence. ECF No. 12 at 10-12. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom allegations. *Id.* For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence, and any errors identified were harmless. The ALJ therefore did not err in assessing the RFC.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 12) is DENIED.
2. Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close the file**.

**DATED** March 24, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20